### SCOTT et al. v. TEXAS & P. RY. CO.

(Circuit Court of Appeals, Fifth Circuit. May 2, 1899.)

No. 774.

1. RAILROADS— RIGHT OF WAY—ADVERSE POSSESSION—CONTRACTS.

That a railroad did not for the statutory period adversely occupy its entire right of way is not material, where the contract under which the right of way was acquired has been fully complied with; the title under the contract alone being sufficient.

2. SAME—EVIDENCE—ESTOPPEL.

Evidence of a partial occupancy of a right of way, to show that there was not an adverse holding of the remainder, is not admissible, where the suit, at its inception, was one for damages for occupancy of the entire right of way, in violation of the contract under which it was acquired.

In Error to the Circuit Court of the United States for the Eastern District of Texas.,

This case is substantially as stated by plaintiffs in error as follows:

"This action was brought on the 12th day of January, 1893, in the district court of Harrison county, Tex., and was removed to the circuit court of the United States, at Jefferson, in the Eastern district of Texas. The plaintiff in error sued to recover damages for the abolition or removal of the depot known as 'Scottsville,' in Harrison county, Tex. The Southern Pacific Railway Company and W. T. Scott, in the year 1856, entered into a verbal contract, by which said Scott agreed to allow the said company to have the use of land for a right of way across his farm of 5,000 acres, if the company would establish a depot, with a regular agent, at the point on said lands then and now known as 'Scottsville,' and, further, if said company would permanently maintain said depot at said place, and furnish to the said William T. Scott free passage on the cars of said company for himself. The right of way was laid out 100 feet wide and 700 yards long, and used by the company for its track

from that time. The company established and maintained said depot, under and in accordance with said contract, until April, 1892, when the same was abolished. The abolition of said depot had caused the plaintiff a damage of $50,000. The plaintiff prayed judgment for said damages, or, in the alternative, for the land, if the damages could not be awarded. It was shown that the defendant in error had succeeded, by consolidation under legislative permission, to all of the rights of the Southern Pacific Railway Company. The acts of the legislature of the state of Texas, approved May 24, 1871, November 25, 1871, and May 2, 1873, relative to the consolidation of the Southern Pacific Railway Company and defendant, were read in evidence, and may be copied in the briefs of counsel in the appellate court: the Texas & Pacific Railway Company succeeding to all of the rights of the Southern Pacific Railway Company. The plaintiff in error alleged that W. T. Scott had died, and that he acquired the Scott farm by purchase, and owned the land at Scottsville, and was entitled to the damages. Subsequently the other heirs of W. T. Scott intervened, and claimed that they and plaintiff in error were all of the heirs at law of W. T. Scott, and that they were entitled to the recovery of the damages or the land. The heirs, as such, now prosecute the case. The case was tried in the circuit court, and that court held that the plaintiffs in error could not recover any damages for the abolition of the depot, but that they were entitled to recover the value of the land occupied as a right of way, and assessed the damages according to the rule obtaining in condemnation proceedings when lands are taken for right of way. The circuit court of appeals reversed this judgment (23 C. C. A. 424, 77 Fed. 726), and held: (1) That the company had acquired the right of way by adverse use and prescription, and therefore plaintiffs could recover neither the land nor pay for same; (2) that the defendant in error had complied with its contract, and was not amenable to any suit whatever. This ruling was based on Railway Co. v. Marshall, 136 U. S. 393, 10 Sup. Ct. 846.

"Before the case was tried the second time in the circuit court, the plaintiffs in error filed the second supplemental petition (a replication) to plea of limitation and prescription, in which they averred that the defendant in error had actually occupied and used only a strip of land 25 feet wide, and not a strip 100 feet wide, and that defendant would be entitled to recover on its plea of prescription only the strip 25 feet wide. On the second trial the defendant relied on the general demurrer and the following answer: 'Defendant says that plaintiffs cannot recover in this cause, because the evidence shows that this defendant company and its predecessors have substantially complied with the contract set out in plaintiffs' petition, by keeping the station referred to at the place of Scottsville fully equipped and repaired and operated from the year 1856, continually, to April, in the year 1892, whereby the defendant has fully complied with said contract sued on, and the plaintiffs cannot recover.' The court made the following ruling on the demurrer: 'This day came on to be heard the demurrer of the defendant, and the court sustains said demurrer, and holds that the contract set up had been complied with by the defendant, and that no damages for removal of station can be recovered.' To this ruling the plaintiff and interveners excepted. On the first supplemental petition, asking pay for the land used as a right of way, the court made this ruling: 'The court refused to hear any evidence on the allegations of the first supplemental petition, as to assessing damages and fixing compensation for plaintiff and interveners as in condemnation proceedings.' To this ruling interveners and plaintiff excepted. The plaintiffs in error on the trial introduced evidence proving the allegations of the petition as to the contract, and the abolition of the depot in 1892, and then offered further evidence to maintain the case as follows: 'Thereupon the plaintiff and interveners offered the following evidence: That the defendant, in April, 1892, fenced the right of way along the track, on the land described in the petition, and that the fence so erected by the defendant inclosed a strip of land 100 feet wide, and the same which is described in the petition, and that, prior to the time said land was so fenced, all of it, except a strip 40 feet wide, through the center of which the track lay, had been used, cultivated, and occupied by the plaintiff and interveners, and that there had been no occupancy of any of said land by defendant, except the strip 40 feet wide, and that the plaintiff and interveners had occupied the re-

mainder of said strip 100 feet wide; that the depot at Scottsville was removed in April, 1892; also, the allegations of their pleadings as to removal of said depot; also, the allegations as to the rental value of that part of the land occupied by the defendant and inclosed in its fences built in 1892, and which it had not occupied prior to said date as a right of way; and, also, all other allegations of said pleadings of interveners and plaintiff showing the violation of the contract on which the suit was brought. Whereupon the defendant objected to all of said evidence, because the allegations of the plaintiff's pleadings and the plaintiff's evidence showed that the defendant had complied with said contract set up in the petition, and had kept said depot at Scottsville until April, 1892, and that the said petition showed that under the contract the defendant was entitled to a right of way 100 feet wide when it complied with the contract; and thereupon the court sustained said objections, and excluded all of said evidence, and held that said contract had been complied with, and gave the jury a peremptory instruction to find for defendant.'

"The first, third, fourth, and fifth assignments of error are as follows: '(1) The court erred in sustaining the demurrers of defendant, and holding, on said demurrers, that the contract set up in the petition had been complied with, and in refusing to hear the evidence as to damages.' '(3) The court erred in holding that the pleadings of plaintiff and interveners and the evidence showed that the contract had been substantially complied with. (4) The court erred in giving the jury a peremptory instruction to find for the defendant. (5) The court erred in holding that the pleadings of the plaintiff and interveners showed that the contract had been complied with by the defendant, and that they, the plaintiff and interveners, were not entitled to any relief.' "

S. P. Jones and T. P. Young, for plaintiffs in error.

F. H. Prendergast, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PER CURIAM. When this case was formerly before this court, the contention of the railway company was that the contract sued on, not being in writing, nor to be performed within one year, was void under the statute of frauds, and that the railroad company had acquired the right of way in question, 100 feet wide through the lands described, by the use and enjoyment thereof during a period of 36 years, which use had been exclusive, uninterrupted, continuous, and under a claim of right adverse to the owner of the fee; and, in the alternative, that, if the contract sued on was valid, then the railroad company had acquired the right of way in question by having fully complied in all respects with the terms of said contract. This court sustained the contention of the railroad company, reversed the judgment of the circuit court, and remanded the cause for a new trial. Railway Co. v. Scott, 41 U. S. App. 624, 23 C. C. A. 424, and 77 Fed. 726. The questions presented in this present writ appear to be the same as presented in the former, with the exception that, although the contract provided for a strip, or right of way, 100 feet wide, the railroad company, prior to 1892, only used and occupied a strip 25 feet wide, and therefore the plaintiffs, on the theory that the contract was void, are entitled to recover all of the right of way in controversy except a strip 25 feet wide.

The record shows that, to maintain this contention, the plaintiffs offered evidence to prove that, except for the strip 25 feet wide, prior to 1892, the plaintiffs and their ancestors used, occupied, and cultivated the same, and that the railroad company was not in possession, and this evidence was rejected. If the right of the railroad company

to hold the right of way in question is based solely upon adverse use and possession, it would seem that the evidence offered should have been admitted. If, however, the title of the railroad company is based upon the contract as a valid executed contract, the evidence was properly rejected. The court held, on the former writ, that, if the contract was invalid, the railroad company had an easement by adverse use and occupancy; yet it appears clear that the court also decided that the contract sued on, having been fully performed and executed, was a valid and binding contract, and that thereunder the railroad company had acquired full title to the right of way as specified and described in the contract, and that was, as admitted by the plaintiffs in their original petition, a strip 100 feet wide, 50 feet on each side of the center of the track. Under this view of the case, and considering, further, that the contention of the plaintiffs in error that the strip taken for the right of way was only 25 feet wide is in conflict with his former judicial admissions, we are of opinion that the ruling of the court below rejecting the evidence was correct.

The judgment of the circuit court is affirmed.